# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA HEAD, on behalf of ) | |
| T.L.G., minor child, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-383-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Cynthia Head requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for her daughter T.L.G. under the Social Security Act. The claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that T.L.G. was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and the case REMANDED for further proceedings by the ALJ.

### Social Security Law and Standard of Review

Disability for a child under the age of eighteen according to the Social Security Act is defined as "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less

than 12 months." 20 C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process to evaluate a claim for a child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), *citing Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991). The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence or substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires the claimant to establish she has a severe impairment or combination of impairments. If the claimant is engaged in substantial gainful activity or has no severe impairment or combination of impairments, she is considered not disabled. Otherwise, the claimant's impairment is measured against the listing of impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1. A claimant suffering from an impairment or combination of impairments that meets, medically equals or functionally equals the severity of a listed impairment, and that meets the duration requirement, is considered disabled. *See* 20 C.F.R. § 416.924(a)-(d)(2).

## Background and Procedural History

T.L.G. was born on April 16, 1991, was fourteen (14) years old at the time of the administrative hearing and was enrolled in ninth grade. The claimant alleges T.L.G. is disabled due to idiopathic scoliosis status post spinal fusion from T4 through L3 levels and depression. The claimant applied on behalf of T.L.G. for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. After the application was denied, the claimant obtained a hearing before ALJ Demos A. Kuchulis, who determined that T.L.G. was not disabled on March 31, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step three of the sequential evaluation. He determined that T.L.G.'s history of scoliosis status post posterior spinal fusion from T4 through L3 was a severe impairment within the meaning of the regulations (Tr. 20). But he also found that T.L.G.'s impairment did not meet, medically equal, or functionally equal the criteria of listing 101.00L (Tr. 21-22). The ALJ thus concluded that T.L.G. was not disabled (Tr. 27).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly develop the record as to T.L.G.'s possible mental impairment; and, (ii) by finding that T.L.G. had less than marked limitations in moving about and manipulating objects and no limitation in attending and completing tasks and health and physical well being. The Court finds the claimant's first contention persuasive.

The record reveals that T.L.G. underwent posterior spinal fusion of T4-L3 with instrumentation and iliac crest bone grafting in October 2004 because of idiopathic scoliosis (Tr. 132-33). Nearly eight months following her surgery, T.L.G. was doing "fairly well" except for pain at her bone graft site and occasional "fatigue-type pain" in her spine. T.L.G. was to avoid collision and contact activities but could gradually increase her activities (Tr. 197).

Following her surgery, however, it was reported on the Disability Report that T.L.G. was getting detention at school because she had to stand up to alleviate her pain. Her falling grades and decreased concentration were attributed to her pain (Tr. 72). On a form explaining her recent medical treatment, T.L.G. described some of her problems as follows: "I have no desire to do anything, all I want to do is sleep. I cry a lot over this. I was going to go to [the] school counselor for this but my mother is finding a private counselor . . . . [S]ometimes it is hard to breathe. . . . I have lost 40 [pounds] since last year [and] continue to lose-don't know why other than no appetite." (Tr. 97). At the administrative hearing, T.L.G. testified that she had problems concentrating approximately one to two times per week for a couple of hours at a time because of her back pain. This lack of concentration had caused her grades to drop (Tr. 218-19). T.L.G. slept a lot more than in the past, and she felt depressed. The problems had increased since her surgery, and T.L.G. related them to her level of pain. If she was hurting badly, she would just stay in bed and cry. This occurred a couple of times per month (Tr. 224-25). T.L.G. testified that since her surgery she did not feel like people accepted her (Tr. 225). In her testimony, the claimant reiterated that T.L.G. suffered from constant pain and frequent depression, had problems moving around, and had

declining grades in school (Tr. 230). She was in the process of getting T.L.G. counseling for her depression (Tr. 233).

Prior to the administrative hearing, the claimant's attorney requested that the ALJ send T.L.G. for a mental consultative examination based on her pain and depression (Tr. 99). The ALJ *did* note T.L.G.'s testimony "that she had problems concentrating a few times a week" because of her pain and that "she was depressed and . . . stayed in bed and cried a couple of times a month." He also noted the claimant's testimony "that [T.L.G's] grades had dropped" and that she was looking into counseling (Tr. 21). But the ALJ made no mention in his decision of the request for a mental examination and appears to have ignored it.

An ALJ has broad latitude in deciding whether or not to order a consultative examination, *see Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990), but he still retains "a basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Department of Health & Human Services*, 5 F.3d 476, 479-80 (10th Cir. 1993) [citations omitted]. He should order a consultative evaluation "if such an examination is necessary or helpful to resolve the issue of impairment." *Hawkins*, 113 F.3d at 1167. Here, the ALJ determined that T.L.G.'s pain and other symptoms from her physical impairments were unsupported by objective evidence; this triggered the need for further development of the record as to a possible mental impairment under 20 C.F.R. § 416.929(b). *See, e. g., Miller v. Barnhart*, 2004 WL 1304050, at *9 (S.D. N.Y. May 6, 2004) ("[I]f a claimant alleges pain or other symptoms that are not substantiated by the medical or laboratory evidence, the ALJ is required to 'develop evidence regarding the possibility of a medically determinable mental impairment,' when there is information to suggest that such

an impairment exists.") [unpublished opinion], *quoting* 20 C.F.R. § 416.929(b) ("We will develop evidence regarding the possibility of a medically determinable mental impairment when we have information to suggest that such an impairment exists, and you allege pain or other symptoms but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms."). Although there is no diagnosis of any mental impairment in the record, T.L.G. raised the possibility that she suffered from depression in forms she completed for the Social Security Administration, *e. g.*, she reported loss of interest, sleeping a lot, crying, and loss of appetite and weight (Tr. 97), and her testimony at the administrative hearing revealed that she felt depressed, lost concentration at school causing her grades to decline, cried a lot, felt unaccepted by her peers, and had days when she did not get out of bed (Tr. 218-19, 223-26). This constituted "information to suggest that such an impairment exists" under 20 C.F.R. § 416.929(b). *See, e. g., Zarmin v. Callahan*, 1997 WL 790595, at *7-8 (N.D. Ill. Dec. 18, 1997) (noting further inquiry into a possible mental impairment was indicated under 20 C.F.R. § [416.929(b)], even though "there ha[d] been no affirmative diagnosis of depression," and remanding the case "for further proceedings to determine if plaintiff . . . ha[d] depression and, if so, if it [was] severe enough to cause plaintiff's symptoms.") [unpublished opinion].

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of T.L.G.'s possible mental impairment pursuant to the requirements of 20 C.F.R. § 416.929(b). If the ALJ ultimately determines that T.L.G. suffers from a mental impairment, he should determine whether it meets or medically equals any applicable listings, and if not, whether it functionally equals a listing, *i. e.*, whether the

claimant suffers marked or extreme limitations in the domains of functioning set forth in 20 C.F.R. § 416.926a(b)(1).

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 24th day of March, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**